## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Keith Eugene Washington,                    Civ. No. 08-135 (MJD/JJK)

                Petitioner,

v.                                                          **REPORT AND**
                                                            **RECOMMENDATION**

 Jessica Benson, Warden,

             Respondent.

Keith Eugene Washington, OID #205461, MN Correctional Facility, 970 Pickett St. North, Bayport, MN 55003, *pro se*.

Kristine Fuge, Assistant County Attorney, Chisago County, 313 North Main St., Suite 373, Center City, MN  55012, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1).  The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court recommends that Petitioner's Petition be denied and this action be dismissed with prejudice.

### BACKGROUND

      This case arises out of Petitioner's October 2005 conviction on assault charges in state court.  The assault occurred on August 1, 2004, when Petitioner was an inmate at the Rush City Correctional Facility.  He threw scalding hot liquid into the eyes and face of a correctional officer and then beat the officer with his

fists.  Thereafter, assault charges were brought against Petitioner in Chisago County District Court.  Specifically, Petitioner was charged with first-degree assault against a peace officer and second-, third-, and fourth-degree assault. Four months before trial, on June 28, 2005, the State filed a motion providing notice of intent to seek an upward-sentencing departure.  One day before the start of trial, Petitioner waived his right to have a jury find facts necessary to justify an upward-sentencing departure.

A two-day bench trial commenced on October 13, 2005.  At trial, Petitioner conceded that he was guilty of third-degree and fourth-degree assault.  Following the trial, the district court found Petitioner guilty of fourth-degree, third-degree, and second-degree assault, and of attempted first-degree assault against a peace officer.  The district court found that aggravating factors justified an upward-durational departure, sentenced appellant to 96 months without the possibility of supervised release, and entered convictions on all four counts.

Petitioner appealed his conviction to the Minnesota Court of Appeals, raising each of the grounds that now form the basis for his habeas petition. These grounds are:  (1) that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that Petitioner intended to commit first-degree assault of a correctional office; (2) that the district court erred by not impaneling a sentencing jury and by instead sentencing Petitioner to an upward departure based on judicial fact-finding; and (3) that the district court erred in imposing a fully-executed sentence without the possibility of supervised release.

2

In August 2007, the Minnesota Court of Appeals affirmed the conviction in part and reversed in part. *State v. Washington*, No. A06-932, 2007 WL 2416867, at *6 (Minn. Ct. App. Aug. 28, 2007). The Court of Appeals rejected each of Petitioner's arguments for reversal of the conviction. The State did, however, take the position on appeal that the convictions for third- and fourth-degree assault should be vacated because they are lesser degrees of second-degree assault. *See id.* at *5. The Court of Appeals agreed and affirmed the conviction for attempted first-degree assault and second-degree assault, but vacated the convictions for third-degree and fourth-degree assaults. *Id.* at *5-6. On November 13, 2007, the Minnesota Supreme Court denied further review. On January 15, 2008, Petitioner filed his federal habeas petition under 28 U.S.C. § 2254 in the United States District Court, District of Minnesota.

## DISCUSSION

## I.    STANDARD OF REVIEW

Petitioner has the difficult task of showing that he is entitled to habeas relief under the standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court's authority to vitiate state court decisions, by the granting of a writ of habeas corpus, is now limited to the narrow class of claims

which have been fully exhausted in the state courts, and which involve an

adjudication that either:

>   (1)  resulted in a decision that was contrary to, or
>   involved an unreasonable application of, clearly
>   established Federal law, as determined by the Supreme
>   Court of the United States; or
>
>   (2)  resulted in a decision that was based on an
>   unreasonable determination of the facts in light of the
>   evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has determined that the "contrary to," and

"unreasonable application" clauses of § 2254(d)(1), present two separate

grounds on which a federal court may grant habeas relief to claims adjudicated in

the state courts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  The Eighth Circuit

has since described a federal court's review as follows:

>   A decision is "contrary to" federal law "if the state court arrives at a
>   conclusion opposite to that reached by [the Supreme] Court on a
>   question of law" or if it "confront[ed] facts that are materially
>   indistinguishable from a relevant Supreme Court precedent" but
>   arrived at an opposite result. [*Williams v. Taylor*, 529 U.S. 362, 405,
>   (2000)]. A state court "unreasonably applies" federal law when it
>   "identifies the correct governing legal rule from [the Supreme]
>   Court's cases but unreasonably applies it to the facts of the
>   particular state prisoner's case," or "unreasonably extends a legal
>   principle from our precedent to a new context where it should not
>   apply or unreasonably refuses to extend that principle to a new
>   context where it should apply." [*Id.* at 407].
>
>   A federal court may not issue the writ simply because it "concludes
>   in its independent judgment that the relevant state-court decision
>   applied clearly established federal law erroneously or incorrectly.
>   Rather, that application must also be unreasonable." [*Id.* at 411].

*Engesser v. Dooley*, 457 F.3d 731, 735-36 (8th Cir. 2006).  "The 'unreasonable

application" clause requires the state court decision to be more than incorrect or

erroneous . . . . The state court's application of clearly established law must be

objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations

omitted).  "'[O]bjectively unreasonable' does not mean 'clear error,' because

'[t]hese two standards . . . are not the same,'" and "[t]he gloss of clear error fails

to give proper deference to state courts by conflating error (even clear error) with

unreasonableness."  *LaFrank v. Rowley*, 340 F.3d 685, 689 (8th Cir. 2003)

(quoting *Lockyer*, 538 U.S. at 75), *cert. denied*, 541 U.S. 950 (2004).  Under this

standard, the federal court "must deny a writ – even if we disagree with the state

court's decision – so long as that decision is reasonable in view of all the

circumstances."  *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (*citing Williams*,

529 U.S. at 409-13).

    A Petitioner may also challenge a state court's factual findings in a § 2254

petition, and relief may be granted if the state court adjudication "resulted in a

decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).

However, 28 U.S.C. § 2254(e)(1) retains a presumption of correctness for all

purely factual determinations rendered by a state tribunal, which can, as a result,

only be rebutted by the production of clear and convincing evidence to the

contrary.[1]  *See Lupien v. Clarke*, 403 F.3d 615, 618 (8th Cir. 2005) ("State court

factual findings are presumed to be correct, and this presumption can be

rebutted only by clear and convincing evidence.") (quotations omitted).

## II.    INSUFFICIENCY OF THE EVIDENCE

Petitioner's first ground for habeas relief is that "the evidence was

insufficient as a matter of law to prove beyond a reasonable doubt that Petitioner

intended to commit first-degree assault or [that he] did not desist voluntarily and

abandon any intent to commit that offense."  (Doc. No. 1.)  Petitioner is thus

claiming a failure of an essential element of the due process guaranteed by the

Fourteenth Amendment "that no person shall be made to suffer the onus of a

criminal conviction except upon sufficient proof – defined as evidence necessary

to convince a trier of fact beyond a reasonable doubt of the existence of every

element of the offense."  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

Our habeas review of such a constitutional claim of insufficiency of

evidence is of course limited by the boundaries set by the AEDPA described

above.  In addition, "[w]ithin the context of § 2254, we consider 'whether, after

---

[1]      Section 2254(e)(1) specifically states the following:

    In a proceeding instituted by an application for a writ of habeas
    corpus by a person in custody pursuant to the judgment of a State
    court, a determination of a factual issue made by a State court shall
    be presumed to be correct.  The applicant shall have the burden of
    rebutting the presumption of correctness by clear and convincing
    evidence.

28 U.S.C. § 2254(e)(1).

viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'" *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir. 2005) (quoting

*Jackson*, 443 U.S. at 319).  In doing so, we presume the findings of fact made by

the Minnesota courts are correct unless Petitioner rebuts the presumption by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lupien*, 403 F.3d at 618.

### A.    Intent to Commit First-Degree Assault

Under Minnesota law, a person is guilty of attempted first-degree assault if

that person, "with intent to commit [first-degree assault], does an act which is a

substantial step toward, and more than preparation for, the commission of [first-

degree assault] . . . ."  Minn. Stat. § 609.17, subd. 1 (2004).  Minn. Stat.

§ 609.221 defines first-degree assault and makes it a crime to "assault[] a peace

officer or correctional employee by using or attempting to use deadly force

against the officer or employee while the officer or employee is engaged in the

performance of a duty . . . ."  Minn. Stat. § 609.221, subd. 2(a) (2004).  A

defendant's intent is "generally proved circumstantially – by drawing inferences

from the defendant's words and actions in light of the totality of the

circumstances."  *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).  Here, the

Minnesota Court of Appeals painstakingly analyzed the trial record in this case,

acting with due regard for the presumption of innocence and the requirement of

proof beyond a reasonable doubt, to determine whether the evidence, when

viewed in the light most favorable to the conviction, was sufficient to permit the

7

guilty verdict of first-degree assault.  *See Washington*, 2007 WL 2416867, at
*2-3.

In doing so, the court of appeals first found that the following evidence was
sufficient to support the district court's finding that Petitioner intended to commit
first-degree assault.  As preparation for the attack on the correctional officer,
Petitioner created a "stinger" (a makeshift device used to heat liquid), prepared
extremely hot water, taped 24 AA batteries together, and placed the block of
batteries in a knotted sock.  He left the battery-filled sock in the open doorway of
his cell and then attacked the officer with the hot liquid, throwing it in the officer's
face, when the officer approached the cell.  Petitioner then repeatedly punched
the officer, after which the officer used his chemical spray.  Petitioner then
returned to his cell and retrieved the battery-filled sock and went back toward the
officer.  By this time several other correctional officers had arrived on the scene.
When Petitioner saw them approaching he dropped the sock.

The appellate court noted that the facts were not disputed and that the
entire incident is depicted in the video recording of the assault taken by security
cameras.  The court concluded that the facts permitted the inference that when
Petitioner realized that the officer was able to resist his initial assault with the
chemical spray, Petitioner *intended* to use the battery-filled sock to escalate the
assault with the use of deadly force.

Minn. Stat. § 609.17, subd. 1—the attempted first-degree assault statute—
also requires there to have been a substantial step taken toward the commission

of that crime.  The above recited facts show that there was sufficient evidence

that substantial steps were taken to commit the crime of first-degree assault.

Specifically, Petitioner prepared a potentially deadly weapon (*i.e.*, a sock filled

with 24 AA batteries taped together); Petitioner placed the weapon at the

doorway of his cell for easy retrieval; Petitioner returned to his cell to get the

weapon; and Petitioner proceeded toward the injured officer with the weapon in

hand.  Based on this evidence, and applying the *Jackson v. Virginia* standard,

this Court is satisfied that the Minnesota Court of Appeals's conclusion that the

district court's finding that Petitioner intended to commit first-degree assault is

supported by sufficient evidence, and is not contrary to, or an unreasonable

application of, clearly established federal law.[2]

---

[2]     In the part of the habeas petition in which Petitioner set forth the facts
supporting his insufficiency of evidence claim, he also says that he was found to
be suffering post-traumatic stress disorder by a court-appointed licensed
physician, but "the Court also refused the report of the doctor and sentenced
petitioner to an upward departure violating the United States Constitution in doing
so."  (Doc. No. 1.)  Petitioner's claim refers to the court-ordered evaluation of
Petitioner, pursuant to Minn. R. Crim. Pro. 20.01, performed by Dr. Harlan
Gilbertson before trial.  The Minnesota Court of Appeals addressed Petitioner's
claim that the district court should have given more weight to Dr. Gilbertson's
analysis of Petitioner's psychological condition at the time of the assault.  The
appellate court noted that Dr. Gilbertson's analysis was not introduced at trial,
Dr. Gilbertson did not testify at trial, and, in any event, the doctor's analysis does
not indicate that Petitioner was incapable of forming the specific intent to assault
the officer with deadly force at the time of the incident.  The court's conclusion is
reasonable and is not contrary to, or an unreasonable application of, clearly
established federal law.

**B.    Abandonment of Intent**

Petitioner also argues that there was insufficient evidence to support the state court's finding that Petitioner did not voluntarily and in good faith desist and abandon the intention to commit the crime.  Minn. Stat. § 609.17 provides that "[i]t is a defense to a charge of attempt that the crime was not committed because the accused desisted voluntarily and in good faith and abandoned the intention to commit the crime."  Minn. Stat. § 609.17, subd. 3 (2004).  The Minnesota Court of Appeals reviewed this issue on direct appeal and stated the following:

> The video recording shows that despite an opportunity
> to discontinue the assault, [Petitioner] returned to his
> cell, picked up the battery-filled sock, and walked back
> toward his victim with the sock in his hand.  He did not
> drop the sock until he saw or heard several correctional
> officers entering the area of the facility.  Here, the
> factual circumstances permit the inference that
> [Petitioner's] cessation of the assault was the product of
> the intervening officers, not [Petitioner's] good-faith
> intention.  Accordingly, we conclude that there is
> sufficient evidence supporting the direct court's finding
> that [Petitioner] did not abandon his intent to commit the
> offense in good faith.

*Washington*, 2007 WL 2416867, at *3.

Here again, this Court is satisfied, after reviewing the evidence and applying the *Jackson v. Virginia* standard, that the Minnesota Court of Appeals's conclusion is not contrary to, or an unreasonable application of, clearly established federal law.

### III.   *BLAKELY* CLAIM

Petitioner argues that the district court committed constitutional error because it departed upward from the presumptive sentence based on its finding of aggravating factors – without the benefit of a sentencing jury.  However, before trial, Petitioner waived his right to a jury trial with respect to both guilt and to finding aggravating factors for sentencing purposes.  (Doc. No. 8-7, Oct. 12, 2005 transcript at 2-6.)  Petitioner was represented by counsel who made sure that this waiver was on the record, was voluntary, and was free of coercion.  (*Id.*) Because Petitioner's trial was after the ruling of the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), particular attention was paid by the district court and counsel to make sure that Petitioner understood that he had a right to have a jury in any sentencing hearing to decide whether there were aggravating factors to justify an upward departure from the presumptive sentence.  (Doc. No. 8-7, Oct. 12, 2005 transcript at 2-6.)  After Petitioner was found guilty, the court found that the existence of aggravating factors resulted in an upward departure under Minn. Stat § 609.1095 (2004), the dangerous offender statute.

Petitioner now argues that although he waived a sentencing jury, the district court still violated *Blakely* because neither the Minnesota rules, statutes, or case law provide procedure allowing a defendant to waive a sentencing jury or to have a court engage in fact-finding to determine an aggravated sentence. This argument is based on the fact that § 609.1095, subd. 2, was determined to be unconstitutional because it specifically authorized an enhanced sentence

based on a judicial finding that the offender is "a danger to public safety."  *See*

*State v. Hobbes*, 713 N.W.2d 884, 889-90 (Minn. Ct. App. 2006).[3]

Petitioner's argument highlights the quandary the Minnesota courts, like

the courts of many states, were in after *Blakely*.  *Blakely* requires that a jury be

made available to do the fact-finding with respect to the aggravating factors,

which, if found by the jury to exist, would support a court's upward departure in

sentencing.  But the statutes that substantively authorized sentence

enhancements, like the dangerous offender statute at issue here, were codified

before *Blakely*, when the state legislature expected that judges would be making

all sentencing decisions.  The legislature eventually amended the relevant

statutes to specifically provide for jury fact-finding during the sentencing process,

but there was a period of uncertainty, after *Blakely* and before the statutes were

amended, about the source of a court's authority to impanel juries as part of the

sentencing process.  Defendants argued that since the legislature had not

provided for juries to make such determinations, and since *Blakely* made the

right to a jury in this context a constitutional requirement, the courts could not

depart from a presumptive sentence even if the court had impaneled a

---

[3]      Minn. Stat. § 609.1095 was amended in 2005.  The amended statute
permits the district court to upwardly depart from the presumptive sentence if the
fact-finder (*i.e.*, judge or jury) determines that the offender is a danger to public
safety.  2005 Minn. Laws ch. 136, art. 16, § 11, at 1118.  Because the amended
statute only applies to crimes committed on or after August 1, 2005, it has no
applicability to Petitioner's case.  *See Washington*, 2007 WL 2416867, at *4.

sentencing jury and the jury had found the existence of the requisite aggravating factors beyond a reasonable doubt, or if, as was the case here, the defendant had knowingly waived the jury.

In 2006, the Minnesota Supreme Court resolved this problem in *State v. Chauvin*, 723 N.W.2d 20 (Minn. 2006).  The court stated that Minnesota courts have inherent judicial authority to engage in activities, such as impaneling a sentencing jury, that are a unique judicial function, and that the district court did not infringe on the legislative function of creating a sentencing guideline system because the district court was "effectuating the legislative policy of allowing the opportunity to depart from the presumptive sentence where substantial and compelling circumstances exist."  *Id.* (quotations omitted).  The court therefore held that district courts possess the authority under Minnesota law to impanel sentencing juries in the absence of explicit legislative authorization.  *Id.* at 27.

The Minnesota Court of Appeals applied *Chauvin* in denying Petitioner's claim that the district court could not depart upward from the presumptive sentence without utilizing a sentencing jury.  Specifically, the court stated the following:

> Before the supreme court concluded that district court possessed inherent authority to impanel sentencing juries in *Chauvin*, 723 N.W.2d at 27, [Petitioner's] waiver of his "right" to a sentencing jury and the district court's departure under the dangerous-offender statute were potentially problematic.  But *Chauvin* settles this issue.  The supreme court's decision in *Chauvin* clearly holds that the district court had inherent authority to impanel a sentencing jury in the absence of explicit

> legislative authorization. *Id.* It necessarily follows that
> here, had [Petitioner] not waived his right to a
> sentencing jury, the district court could have exercised
> its authority to impanel a sentencing jury.
>
> We conclude that [Petitioner's] waiver was not illusory,
> that the district court had authority to accept
> [Petitioner's] waiver and depart from the presumptive
> sentence, and that the district court's sentencing
> departure, based on the waiver, was proper.

*Washington*, 2007 WL 2416867, at *4. This Court concludes that the court of

appeals's decision is not contrary to, nor involves an unreasonable application of,

clearly established federal law as determined by the Supreme Court of the United

States. Indeed, the court's decision was consistent with *Blakely* in that it upheld

the district court's providing of the Sixth and Fourteenth Amendments' rights to a

jury trial – rights that were afforded to Petitioner in this case.[4]

## IV.    SUPERVISED RELEASE

Petitioner also contends that the district court erred by imposing a fully

---

[4]       Petitioner also asserts that when the district court conducted the
sentencing hearing, it erred in finding that he had "two or more convictions for
violent acts" because at least one of these prior matters did not qualify as a
sufficiently violent act. (Doc. No. 1, Attach. 3.) Because Petitioner did not raise
this claim in his appeal to the Minnesota Court of Appeals, it is not properly
exhausted, and will not be addressed here. *See Jones v. Jerrison*, 20 F.3d 849,
853 (8th Cir. 1994) ("Federal courts will not review a procedurally defaulted claim
because a habeas petitioner who has failed to meet the state's procedural
requirements for presenting his federal claims has deprived the state courts of an
opportunity to address those claim in the first instance.") (quotations omitted);
*see also McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) ("Minnesota law
provides that once the petitioner has directly appealed his sentence all matters
raised therein, and all claims known but not raised, will not be considered upon a
subsequent petition for postconviction relief.") (quotations omitted).

executed sentence on Petitioner without the possibility of supervised release.

Minn. Stat. § 609.221, subd. 2(b) provides that a person convicted of assaulting a

correctional employee is not eligible for supervised release "until that person has

served the full term of imprisonment as provided by law[.]"  Petitioner argues that

because he was sentenced to an upward departure under Minn. Stat.

§ 609.1095, subd. 2, a term of supervised release should have been imposed.

Specifically, he argues that defendants sentenced to an upward departure under

§ 609.1095, subd. 2 are specifically excluded from the provisions denying

supervised release.

       The Minnesota Court of Appeals addressed Petitioner's statutory

interpretation claim and held that Minn. Stat. § 609.221, subd. 2(b)

unambiguously requires denial of a supervised-release term, and Minn. Stat.

§ 609.1095, subd. 2 does not conflict with this mandate.  *Washington*, 2007 WL

2416867, at *5.  The court of appeals's decision to then sentence Petitioner

without the possibility of supervised release does not violate any clearly

established federal law; in fact, it does not involve any constitutional or federal

statutory issue at all.  Instead, this issue is purely a matter of state law

interpretation and does not come within the scope of proper federal habeas

review.  *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court

may not re-examine a state court's interpretation and application of state law.").

## CONCLUSION

       In conclusion, the Minnesota Court of Appeals's decision was not "contrary

to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States . . . ."  28 U.S.C.

§ 2254(d)(1).  Therefore, Petitioner's Petition should be denied.

## RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings

herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas

Corpus (Doc. No. 1), be **DENIED**; and

2.    This action be **DISMISSED WITH PREJUDICE**.


Dated:  March 12, 2009


                                              s/Jeffrey J. Keyes
                                              JEFFREY J. KEYES
                                              United States Magistrate Judge


Under D. Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**March 26, 2009**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.